**Timothy A. GILLISON, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 21248.**

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 7, 1967.

Decided July 2, 1968.

Mr. C. William Tayler, Washington, D. C. (appointed by this court), for appellant.

Mr. W. Carey Parker,. Atty., Department of Justice, of the bar of the United States District Court for the District of Columbia, pro hac vice, by special leave of court, with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Victor W. Caputy, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and WRIGHT, and ROBINSON, Circuit Judges.

BAZELON, Chief Judge:

Gillison appeals his robbery conviction in a jury trial at which co-defendant Faustin Moran pled guilty at the close of the government's case. The government concedes that the prosecutor's conduct of the cross examination of appellant, who was the sole witness for the defense, was improper but argues that the error was not prejudicial. We disagree.

On direct examination appellant testified that he was unarmed and only seeking a job when he entered the construction site office trailer with Moran who thereupon drew a gun and took a $2000 payroll from the supervisor. He denied that he had any knowledge that Moran was armed and intended to rob, or that he assisted Moran in any way. Appellant said that his failure to stop Moran and his flight after the robbery was attributable to panic and fear of Moran. On cross examination he testified about the robbery and the interval before his arrest. The prosecutor then asked:

Q. And how long were you away from the construction shack before you were arrested?

A. I don't know. Maybe 10 or 15 minutes.

Q. Maybe 10 or 15 minutes. And during that period of time you were out of the presence of Mr. Moran, weren't you?

A. Yes, sir.

Q. There was nothing to prevent you from going back to the construction shack and saying to Mr. Sutton or the police or anyone there, to tell them, "Look, I had nothing to do with this robbery," was there?

A. Well, when I ran, I ran down in the basement. I didn't know exactly where Moran was. And I stayed down in the basement, and I didn't come back. I didn't want to run into him again.

Appellant denied that he had flushed money down a toilet in an empty bathroom where he was apprehended 10 or 15 minutes after he fled the robbery. Then the following took place:

Q. Now, if you had nothing to do with it, when you were turned over to Officers McCann and Stroman, when they apprehended you, why didn't you tell them, "Look, I didn't do it."?

A. They wouldn't listen. When they approached me, he wouldn't listen. He just jumped right on me.

Q. Didn't you try to tell them?

A. Yes, sir.

Q. As a matter of fact, you wouldn't make any statement?

A. No, I didn't.

Q. As a matter of fact, you didn't?

A. No.

Q. You didn't want to make any statement when you were asked by the police?

A. *I didn't want to make any statement without the presence of the attorney.*

Q. *And that's the action of an innocent man who went looking for a job.*

MR. RAPOPORT: I object, Your Honor.

THE COURT: Wait just a moment. Don't argue with the witness, Mr. [Prosecutor].

[PROSECUTOR]: Yes, Your Honor. [Emphasis added.]

Gillison went on to say that he met Moran for the first time in a bus station on the morning of the robbery and rode to the construction site trailer in Moran's car.

At the conclusion of the cross examination, the defense rested and moved for a mistrial on the ground that the prosecutor's remark was prejudicial error.[1] Although the court stated outside the presence of the jury that defense objections to the remark had been sustained, it refused to instruct the jury to disregard the remark. Appellant was found guilty of one count of robbery and on June 30, 1967, sentenced to the custody of the Attorney General under the Federal Youth Corrections Act.[2]

In Griffin v. State of California[3] the Supreme Court held that the Fifth Amendment forbids prosecutor and court from commenting on an accused's failure to testify on his own behalf. The distance between that issue and the prosecutor's comments here about the accused's failure to make an exculpatory statement upon arrest is infinitesimal. Indeed, in Miranda v. State of Arizona, the Supreme Court recognized the applicability of *Griffin* to this situation, when, at footnote 37, the Court noted that "in accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. *The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation.* Cf. Griffin v. State of California * * *; Malloy v. Hogan, 378 U.S. 1, 8 [84 S.Ct. 1489, 12 L.Ed.2d 653] (1964) * * * [Emphasis added]."[4] Even where there is no interrogation and the accused merely remains silent, no weight whatever can be given to the accused's silence. We agree with the Second Circuit in United States

---

1. Cf. Garris v. United States, 129 U.S. App.D.C. 96, 390 F.2d 862, February 14, 1968.

2. 18 U.S.C. § 5010(b) (1964 ed.).

3. 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed. 2d 106 (1965).

4. 384 U.S. 436, 468, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966).

v. Mullings that "it is well settled that an inference of guilt may not be drawn from a failure to speak or to explain when a person has been arrested." [5]

█ The government concedes that "the prosecutor's remark was improper since it related to the issue of the guilt or innocence of the appellant, rather than to the credibility of the appellant's specific testimony. See e. g. Grunewald v. United States [6] * * *, Rafel [Raffel] v. United States [7] * * *." But we are told that under Chapman v. [State of] California [8] "the beneficiary of a constitutional error [must] prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." The government contends that it can carry this burden, because the prosecutor's questioning on cross examination concerning the reasons for appellant's silence was an isolated line of inquiry which terminated immediately after the court's admonition. The tainted inquiry, however, marked the entire cross examination which was directed primarily at appellant's activities *after* the robbery. Moreover, it is by no means clear that the jury was even aware that defense counsel's objection was sustained by the court. The trial judge merely admonished: "Wait just a moment. Don't argue with the witness, Mr. [Prosecutor]." The court's subsequent remarks concerning this error were made outside the presence of the jury.

Since we have no "belief that [the line of questioning] was harmless beyond a reasonable doubt," [9] appellant must be afforded a new trial "free from the pressure of unconstitutional inferences." [10]

Reversed and remanded.

---

5. 364 F.2d 173, 175 (1966). Only the prosecutor mentioned that Gillison was interrogated when arrested. None of the arresting officers were questioned or testified about that aspect of the arrest.

6. 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957).

7. 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926).

8. 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Since this case fundamentally applies principles enunciated in *Griffin* and not *Miranda*, we apply *Chapman*.

9. *Id.*

10. *Id.* at p. 26, 87 S.Ct. at 829.