No. 23116.

PATRICK JOSEPH MONTOYA *v*. THE PEOPLE OF THE STATE OF COLORADO.
(457 P.2d 397)

Decided July 28, 1969.

J. HARRISON HAWTHORNE, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, JAMES F. PAMP, Assistant, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE LEE.

PLAINTIFF in error, Patrick Joseph Montoya, was convicted by a jury of the crime of larceny of a motor vehicle. By this writ of error he seeks reversal of the judgment.

 Montoya contends the court erred in several particulars; however, in view of our disposition of the case, it is necessary only to consider the contention that the district attorney in his closing argument erroneously and prejudicially referred to and commented upon Montoya's failure to testify. Our study of the record convinces us that the verdict of guilty and judgment of conviction must be set aside and the cause remanded for a new trial.

·On August 2, 1966, Montoya, who was an inmate of the Colorado state penitentiary, assigned to the medium security section, was on a work detail at the construction site ·of a new facility. It was after lunch when a peni-

tentiary truck assigned to the job was discovered missing, along with three inmates — one of whom was Montoya. The truck was observed by a penitentiary correctional officer headed toward state highway No. 50 at a high rate of speed. Montoya was sitting in the middle of the seat, with the driver on his left and another inmate on his right. The truck proceeded on to Pueblo where it collided with a state patrol car and thereafter Montoya and the two other inmates were apprehended. The three were charged by information with larceny of a motor vehicle (C.R.S. 1963, 40-5-9) and larceny by bailee (C.R.S. 1963, 40-5-13).

At the trial Montoya chose not to testify. His presence in the prison truck during the transaction was explained by the testimony of the codefendants, who stated that all three had been drinking a home brew they secretly concocted out of yeast, sugar, water and tomato paste. Montoya had become intoxicated. In order to protect him from being discovered in this condition, he was placed in the cab of the truck by the other two. Thereafter the truck was driven away as above described.

In his charge to the jury, the trial court gave the proper instruction relative to the defendant's right not to testify in his own behalf.

It was the defendant's theory of defense that he was too intoxicated to be capable of forming the intent to commit the crimes with which he was charged, and the court so instructed the jury.

The district attorney in his closing argument commented as follows:

"* * * One other thing, we're dealing here with what's going on in the defendant's mind. The defendant did not testify. He doesn't have to, he has a constitutional right not to testify. However, you are asked to determine what went on in his mind. Now, when you are proving objective facts, white pickup truck, Medium Security area east of Canon City, these are objective facts. So, these can be proven by anybody who knows, and there's no argument

about it. *But when we are talking about what goes on in somebody's mind, only that person can actually tell you. Now, here we are in the case. You are asked to decide what went on in his mind without hearing it from the very person, the only person who really knows.* Is this a serious — does this create a serious substantial doubt in your mind, or is it only a possibility of a doubt? I think under these circumstances it would have to be only a possibility of a doubt and not a serious substantial doubt *because [from] the person who really knows, we heard nothing.*" (Emphasis added.)

Defense counsel objected. The court sustained the objection. The offending remarks, however, were not stricken from the record nor was the jury instructed to disregard them.

Felonious intent — that is, intent to steal — is an essential element of proof of the crimes of larceny and larceny by bailee. The district attorney's comments were clearly directed to Montoya's failure to testify concerning his intent at the time of the transaction in question, and, of course, under the federal and state constitutions, and our statute, Montoya had no obligation whatsoever to testify concerning his state of mind or any of his actions relating to the matters at issue. U. S. Const. amend. V and XIV, § 1; Colo. Const. art. 11, § 18; C.R.S. 1963, 39-7-15. While it is undoubtedly true that where the defendant does not choose to testify, the jury may draw any reasonable inference of guilt warranted by the evidence in the case (*Schamber v. People,* 159 Colo. 102, 410 P.2d 514; *Davis v. People,* 137 Colo. 113, 321 P.2d 1103; *Allison v. People,* 109 Colo. 295, 125 P.2d 146; *O'Loughlin v. People,* 90 Colo. 368, 10 P.2d 543, 82 A.L.R. 622; *Blanda v. People,* 67 Colo. 541, 189 P. 249), it is entirely another thing to permit the district attorney to comment on the defendant's failure to testify and to expressly suggest therefrom that the defendant must be guilty of the crime of which he stands charged.

Mr. Justice Harlan, speaking for the United States

Supreme Court in *Griffin v. California,* 380 U.S. 609, 85 S. Ct. 1229, 14 L.Ed.2d 106, stated:

"* * * For comment on the refusal to testify is a remnant of the 'inquisitorial system of criminal justice,' *Murphy v. Waterfront Comm'n,* 378 U.S. 52, 55, which the Fifth Amendment outlaws. It is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly. * * *"

This problem has been considered by this court in *Fries v. People,* 80 Colo. 430, 252 P.341; *Cahill v. People,* 111 Colo. 173, 138 P.2d 936; *Edwards v. People,* 151 Colo. 262, 377 P.2d 399; and most recently in *Martinez v. People,* 162 Colo. 195, 425 P.2d 299. In *Martinez,* which was decided after the instant case had been tried, the court stated:

"In State v. Acosta, 101 Ariz. 127, 416 P.2d 560, the Supreme Court of Arizona had occasion to consider in some detail the problem created by the assertion of a district attorney in closing argument that his evidence is uncontroverted. After recognizing that any direct, or even indirect, statement concerning a defendant's failure to testify in a criminal proceeding may well constitute reversible error, that court went on to state that the 'true test' is whether the comment, in context, was calculated or intended to direct the attention of the jury to the defendant's neglect or failure to exercise his right to testify in his own behalf."

The *Martinez* test, applied to the district attorney's remarks in the instant case, leads inescapably to the conclusion that such comments were prejudicial and in violation of the defendant's right not to testify in his own behalf, thereby denying him a fair trial.

The judgment is reversed and cause remanded for a new trial.

MR. JUSTICE PRINGLE, MR. JUSTICE DAY and MR. JUSTICE KELLEY concur.