Opinion by JUDGE DAILEY
¶ 1 Defendant, Ronald Laroy Lewis, appeals the judgment of conviction entered on jury verdicts finding him guilty of Internet sexual exploitation of a child and Internet luring of a child. We affirm.
I. Background
¶ 2 In response to Lewis's Craigslist advertisement soliciting a "barely legal" for sexual acts, Douglas County Sheriff's Detective Christine Brite pretended to be a fourteen-year-old girl named "Kayla Nelson." After exchanging sexually explicit messages via computers, Brite forwarded to Lewis an image of what appeared to be a teenage girl. Lewis inquired whether or not "Kayla" was "legit," sent "Kayla" a sexually explicit photograph of himself, and arranged to meet her.
¶ 3 Expecting to meet "Kayla" outside his residence in Jefferson County, Lewis was instead arrested by police and charged in Douglas County with Internet sexual exploitation of a child and Internet luring of a child. Lewis's defense at trial was that he did not really believe that the person responding as "Kayla" was only fourteen years old. A jury convicted him as charged.
¶ 4 On appeal, Lewis contends that (1) the trial court erred by instructing the jury that the prosecution was not required to prove that the offenses were committed, as charged, in Douglas County; (2) the prosecution failed to present substantial and sufficient evidence showing that the offense was committed in Douglas County; (3) the trial court erred in allowing the jury unsupervised access to the videotape of Lewis' interrogation by the police following his arrest; and (4) the prosecutor repeatedly made improper comments implying guilt based upon Lewis's exercise of his constitutional right to remain silent. We address-and reject-each contention in turn.
II. Instructing the Jury on the Prosecution's Burden of Proof with Respect to the County Where the Offenses Occurred
¶ 5 After the prosecution presented its case, the court received a question from a *73 juror which read: "What are the jurisdictional roles in this case? A Douglas County detective arresting a Jefferson County suspect and a Littleton 'victim.' " With the parties' agreement, the court did not answer the question.
¶ 6 After the close of all the evidence, defense counsel asserted that the elemental instructions for the offenses should include a requirement that the prosecution prove beyond a reasonable doubt that the offenses were committed, as charged, in Douglas County. Defense counsel's assertion was premised on the view that proper venue is an element of a crime. The trial court rejected counsel's assertion, and, over his objection, instructed the jury, at the prosecutor's request, that "proof of the county in which the offense occurred shall not constitute an element of any offense and need not be proven by the prosecution at trial." The instruction's language was taken nearly verbatim from section 18-1-202(11), C.R.S. 2017, and the court noted that, under that statute, any issues pertaining to the proper venue for trial had to be raised before trial or they were waived.[1]
A. Presentation and Preservation of Issues
¶ 7 Defense counsel objected to the court's instructions because, in his view, they improperly lowered the prosecution's burden of proof and therefore "impede[d] Mr. Lewis's due process rights under the state and federal constitutions." Lewis reasserts that position on appeal. To succeed, however, he recognizes that he also must contest the constitutionality of section 18-1-202(11), C.R.S. 2017.
¶ 8 "To preserve an issue for appeal, a defendant must alert the trial court to the particular issue." People v. Cordova , 293 P.3d 114, 120 (Colo. App. 2011). Here, when confronted by the trial court with section 18-1-202(11), defense counsel did not raise or challenge the constitutionality of the statute. It is doubtful, then, that counsel preserved such a challenge for appellate review. Nonetheless, we will assume, for purposes of this appeal, that he did so. We are willing to do so because Lewis's constitutional claim in the trial court was inextricably intertwined with the effect and validity of the statute on which the trial court relied.
B. Analysis
¶ 9 Lewis correctly points out that "[u]nder both the United States and Colorado Constitutions, due process requires the trial court to properly instruct the jury on every element of the substantive offense with which the defendant is charged so the jury may determine whether all the elements have been established beyond a reasonable doubt." People v. Pickering , 276 P.3d 553, 555 (Colo. 2011).
¶ 10 Lewis asserts that this was not done here, however, because the court failed to recognize that proper venue was a substantive element of the crimes charged.
¶ 11 In People v. Reed , 132 P.3d 347 (Colo. 2006), the supreme court succinctly recounted how the issue of venue as an element has been addressed in Colorado law:
Prior to 1992, in the absence of any legislative provision to the contrary, a defendant's right to trial in the county where the crime was committed was vindicated at the trial itself, with the prosecution having an obligation to prove venue as alleged, just "as any other issue in the case." If the issue was raised, and the prosecution failed to prove venue to the satisfaction of the trier of fact, beyond a reasonable doubt, the defendant was entitled to acquittal. Therefore, in a jury trial, unless there was not even sufficient evidence of the location of the crime to withstand a motion for *74 judgment of acquittal, the issue was one for jury determination.
In 1992, however, the legislature radically changed the nature and effect of a venue determination, see Ch. 73, sec. 12, § 18-1-202(11), 1992 Colo. Sess. Laws 396, 402, placing Colorado among a small minority of jurisdictions treating venue solely as a procedural prerequisite to prosecution. No longer is an allegation of venue a matter to be proved to the satisfaction of the jury, as other elements of an offense, unless the statute defining the crime actually requires as much. § 18-1-202(11), C.R.S. (2005). Instead, any objection to the place of trial authorized by this provision is waived unless it is raised by written motion before trial, in the manner prescribed. Id.
Id . at 349-50 (footnote omitted) (some citations omitted).
¶ 12 Lewis points out, however, that the supreme court in Reed was not called upon to determine whether in 1992 the General Assembly could constitutionally convert venue from an element to a non-element of a crime. Lewis says it could not, based on Amendment VI to the United States Constitution.[2]
¶ 13 "A statute is presumed to be constitutional; the challenging party bears the burden of proving its unconstitutionality beyond a reasonable doubt." Dean v. People , 2016 CO 14, ¶ 8, 366 P.3d 593.
¶ 14 United States Constitution Amendment VI provides, in pertinent part, that
[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district where the crime shall have been committed , which district shall have been previously ascertained by law.
(Emphasis added.)[3]
¶ 15 Most federal courts applying this provision recognize that, contrary to Lewis's position, venue is not an element of a crime which needs to be proven by the prosecution beyond a reasonable doubt. See, e.g. , United States v. Davis , 689 F.3d 179, 185 (2d Cir. 2012) ("Despite its constitutional pedigree, venue is not an element of any crime, so as to require proof beyond a reasonable doubt."); United States v. Engle , 676 F.3d 405, 412 (4th Cir. 2012) ("Venue 'is not a substantive element of a crime.' " (quoting United States v. Griley , 814 F.2d 967, 973 (4th Cir. 1987) )); United States v. Miller , 111 F.3d 747, 749 (10th Cir. 1997) ("Although venue is a right of constitutional dimension, and has been characterized as 'an element of every crime,' this court and others have consistently treated venue differently from other, 'substantive' elements of a charged offense. ... [V]enue need not be proved beyond a reasonable doubt.") (citation omitted).
¶ 16 True, in federal court, unless waived, the prosecution must prove venue to the jury's satisfaction by a preponderance of the evidence. See, e.g. , Davis , 689 F.3d at 185 ; Engle , 676 F.3d at 412 ; Miller , 111 F.3d at 749-50. But the clause in the Sixth Amendment on which those authorities rely has been held inapplicable to the states by the federal circuit courts of appeal and by most state courts that have squarely addressed the issue. See Stevenson v. Lewis , 384 F.3d 1069, 1071-72 (9th Cir. 2004) (collecting cases); see also *75 Schmutz v. State , 440 S.W.3d 29, 35-39 (Tex. Crim. App. 2014) (collecting more cases to this effect). Because, in accord with those authorities, the right to a trial in the district where the defendant committed the crime is not one of those rights that rises to the level of being "fundamental and essential" to a fair trial, we too conclude that the part of the Sixth Amendment on which Lewis relies is not applicable through the Fourteenth Amendment to Colorado. See also, e.g. , Price v. Superior Court , 25 Cal.4th 1046, 108 Cal.Rptr.2d 409, 25 P.3d 618, 624-26 (2001).
¶ 17 A defendant's right to proper venue can be vindicated without having to submit the issue to a jury. See, e.g. , People v. Posey , 32 Cal.4th 193, 8 Cal.Rptr.3d 551, 82 P.3d 755, 759 (2004) (submitting the question of venue to a jury at the end of the case (1) undermines the purposes of a venue provision (i.e., protecting the defendant from the rigors and hardship of standing trial in an assertedly improper locale); (2) conflicts with the treatment of other, analogous procedural issues[4] handled by courts; and (3) "threatens [to produce] the untoward consequence of an 'unwarranted acquittal' when the jury returns a verdict of not guilty predicated solely on lack of proper venue").
¶ 18 Ordinarily, "[t]he power to define criminal conduct and to establish the legal components of criminal liability is vested in the General Assembly." Copeland v. People , 2 P.3d 1283, 1286 (Colo. 2000) ; see People v. Roggow , 2013 CO 70, ¶ 12, 318 P.3d 446 ("[T]he General Assembly ... is charged with defining criminal conduct and establishing the elements of a crime."); People v. Gutierrez-Vite , 2014 COA 159, ¶ 13 n.3, 411 P.3d 119 ("[T]he General Assembly is vested with constitutional authority to define criminal conduct and delineate any statutory defenses."). Such power does not, however, "include the power to 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " People v. Hill , 934 P.2d 821, 829 (Colo. 1997) (quoting Patterson v. New York , 432 U.S. 197, 201-02, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) ).
¶ 19 Because venue does not relate to the guilt or innocence of a defendant, and because a defendant's right to proper venue can be vindicated by other means, the General Assembly's determination that it was not an element of a crime and could be waived does not offend any principle so rooted in the traditions or conscience of our citizens as to be ranked "fundamental." See People v. Gallegos , 293 Ill.App.3d 873, 228 Ill.Dec. 351, 689 N.E.2d 223, 226 (1997) (upholding, as constitutional, a statute eliminating venue as an element of a crime); Omalza v. State , 911 P.2d 286, 295 (Okla. Crim. App. 1996) (holding, consistent with state constitutional venue provision, that because "venue is not an element of the crime, but rather is an element in the determination of the trial court's ability to hear the case, we find venue is solely for the trial court to determine"); see also People v. Taylor , 732 P.2d 1172, 1177 n.5 (Colo. 1987) ("[C]onstitutional and statutory venue provisions are for the benefit of the accused and may be waived."); Smith v. State , 116 Md.App. 43, 695 A.2d 575, 580-81 (Md. Ct. Spec. App. 1997) ("[P]roper venue is not a fundamental right. Indeed, venue may be waived by a criminal defendant.") (footnote omitted).
¶ 20 Consequently we conclude that section 18-2-101(11) is constitutional, and, thus, the trial court's instructions were proper.
III. Sufficiency of the Evidence Proving Proper Venue
¶ 21 As a corollary to the arguments he made about the court's instructions, Lewis contends that the prosecution failed to present evidence at trial to support a finding beyond a reasonable doubt of proper venue. But as we explained above, the prosecution had no such burden, particularly since, as the trial court noted, under section 18-1-202(11) Lewis waived any issue as to venue by failing to bring it to the court's attention within the time prescribed by statute.
IV. Jury's Unrestricted Access to Lewis's Videotaped Statement
¶ 22 We also reject Lewis's contention that reversal is required because the *76 trial court erroneously allowed the jury to have unsupervised and unlimited access during deliberations to his videotaped statements.
¶ 23 Initially, we note that at the close of evidence, the trial court inquired if defense counsel had any objection to "the jury having an ability to view [the videotaped statements] without any sort of further instructions or court supervision." Counsel responded, "No, I do not, Your Honor, because I don't believe that's the type of video where it's a forensic type of situation."
¶ 24 The invited error rule "prevents a party from inducing an inappropriate or erroneous [ruling] and then later seeking to profit from that error." Horton v. Suthers , 43 P.3d 611, 618 (Colo. 2002) (alteration in original) (quoting Roberts v. Consol. Coal Co. , 208 W.Va. 218, 539 S.E.2d 478, 488 (2000) ). The invited error doctrine applies not only when a party requests that the court take a particular action, but also when a party expressly acquiesces in a particular action. Id. at 619.
¶ 25 Recently, a division of this court recognized that the "express acquiescence" part of the invited error rule falls within more traditional notions of "waiver," the effect of which, again, would be to preclude review on appeal. See People v. Rediger , 2015 COA 26, ¶¶ 54-59, 411 P.3d 907 (cert. granted Feb. 16, 2016); see also People v. Rail , 2016 COA 24, ¶¶ 41-42, --- P.3d ---- (determining that counsel "did more than fail to object"; "he affirmatively declined the trial court's offer to poll the jury further," and, in so doing, "waived his inconsistency [of verdicts] claim") (cert. granted Apr. 10, 2017); People v. Lopez , 129 P.3d 1061, 1065 (Colo. App. 2005) ("[B]y acceding without objection to the prosecution's attempt to cure the problem, [the defendant] waived his right to assert error on appeal.").
¶ 26 Here, defense counsel agreed that the jury could have unsupervised and unrestricted access to the videotape during deliberations. In doing so, defense counsel waived Lewis's right to complain about the jury's unrestricted access to the videotape.
¶ 27 Furthermore, even if we were to review Lewis's contention on the merits, we would reject it. In Rael v. People , 2017 CO 67, 395 P.3d 772, the supreme court approved of prior Colorado case law holding that "when considering a jury's access to a defendant's own admissible, out-of-court statements, no special protections against undue emphasis are required and the jury is entitled to unrestricted access to those statements." Id. at ¶¶ 32-33 ; see also Carter v. People , 2017 CO 59M, ¶ 2, 398 P.3d 124 ("[T]he district court did not abuse its discretion in permitting the jury unrestricted access to both a video recording and transcript of the defendant's custodial interrogation.").
¶ 28 Consequently, Lewis is not entitled to reversal on this ground.
V. Prosecutorial Misconduct
¶ 29 Finally, Lewis contends that the prosecutor improperly implied in closing argument that he was guilty based on his exercise of his constitutional rights to remain silent and against self-incrimination. We disagree.
¶ 30 Initially, we note that defense counsel did not object to the comments Lewis challenges on appeal; consequently, reversal is not warranted absent a showing of plain error. See People v. Gordon , 32 P.3d 575, 581 (Colo. App. 2001). To be plainly erroneous, prosecutorial argument must be flagrantly, glaringly, or tremendously improper, and it must so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. People v. Iversen , 2013 COA 40, ¶ 35, 321 P.3d 573. "Prosecutorial misconduct in closing argument rarely constitutes plain error." People v. Rowe , 2012 COA 90, ¶ 30, 318 P.3d 57.
¶ 31 We perceive no error, much less plain error, here.
¶ 32 The prosecutor's comments addressed what Lewis said-and did not say-in the course of an approximately fifty minute, videotaped statement he gave to the detective. Prior to giving his statement, Lewis had been advised of and waived his Miranda rights. See *77 Miranda v. Arizona , 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (requiring advisements as to certain Fifth Amendment rights, i.e., that a suspect "has the right to remain silent, that anything he says can be used against him in a court of law, that he has a right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires"). Based on our review of the tape, we conclude that he talked freely-and nearly exclusively-for nearly forty minutes after the detective asked simply, "Tell me why you think you're here and we can discuss it." At no time did he invoke his right to either counsel or silence.[5] Near the end of his monologue, he said to the detective, "[Y]ou have all the texts, you have the two images. There's nothing more to it than that," at which point the detective asked a few clarifying questions and asked whether Lewis had questions for her. Instead of asking questions, however, he went on to make further statements.
¶ 33 In closing argument, the prosecutor contrasted what Lewis had said with what he had not said. For example, the prosecutor talked about how Lewis had volunteered lots of information during the interview but never blamed himself or categorically denied that he would have had sex with "Kayla" if she had turned out to be real.
¶ 34 We agree with the People that the prosecutor's comments go not to Lewis's silence in the face of police questioning but, rather, to the content of his statements. See People v. Rogers , 68 P.3d 486, 492 (Colo. App. 2002) ("A defendant cannot have it both ways. If he talks, what he says or omits is to be judged on its merits or demerits." (quoting United States v. Goldman , 563 F.2d 501, 503 (1st Cir. 1977) )); see also People v. McReavy , 436 Mich. 197, 462 N.W.2d 1, 10 (1990) ("[W]here the defendant has not maintained 'silence,' but has chosen to speak, the [Supreme] Court has refused to endorse a formalistic view of silence.").
¶ 35 In so concluding, we necessarily reject, as misplaced, Lewis's reliance on People v. Ortega , 198 Colo. 179, 597 P.2d 1034 (1979). In Ortega , the defendant validly waived his right to remain silent and gave a brief statement to the arresting officer. Id. at 180, 597 P.2d at 1035. In closing argument, the prosecutor directed the jury to consider the defendant's failure to protest his innocence or to offer an exculpatory statement during the time he spoke to the police. Id . at 182, 597 P.2d at 1036. Even though the defendant had waived his Miranda rights, the supreme court nonetheless held that the prosecutor's comment impermissibly infringed on the defendant's Fifth Amendment right to remain silent. Id. The court's decision was based, in large part, on the principle that "the mere fact that [a suspect] may have answered some questions or volunteered some statements on his own does not deprive him of his right to refrain from answering any further inquiries...." Id. at 184, 597 P.2d at 1037 (quoting Miranda , 384 U.S. at 445, 86 S.Ct. 1602 ).
¶ 36 Unlike the defendant in Ortega , Lewis did not make a brief statement, answer only some questions, or volunteer only limited statements. Instead, he talked at length, and he never attempted to refrain from answering inquiries. More importantly, though, subsequent United States and Colorado Supreme Court case law have superceded the premises underlying Ortega . See Berghuis v. Thompkins , 560 U.S. 370, 388-89, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010) ("[A] suspect who has received and understood the Miranda warnings, and has not invoked his Miranda rights, waives the right to remain silent by making an uncoerced statement to the police."); Anderson v. Charles , 447 U.S. 404, 408, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980) (A prosecutor can elicit the fact the defendant failed to answer some questions after waiving his Miranda rights because "[s]uch questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving Miranda warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all."); cf.
*78 People v. Quintana , 665 P.2d 605, 610 n.7 (Colo. 1983) ("The failure to make any statement should be distinguished from the situation where an accused does make a statement to law enforcement officials but the statement omits significant details which are later included in a subsequent statement. In the latter situation the accused has not elected to remain silent, but instead has waived that right and made a statement.").
¶ 37 For these reasons, we perceive no error, much less plain error, as a result of the prosecutor's remarks.
VI. Conclusion
¶ 38 The judgment of conviction is affirmed.
JUDGE HAWTHORNE and JUDGE WELLING concur.

Section 18-1-202(11), C.R.S. 2017, provides, in pertinent part:
Proof of the county in which the offense occurred or which county is the proper place for trial pursuant to this section shall not constitute an element of any offense and need not be proven by the prosecution at trial unless required by the statute defining the offense. Any challenge to the place of trial ... shall be made by motion in writing no later than twenty-one days after arraignment, except for good cause shown. The court shall determine any such issue prior to the commencement of the trial. ... Failure to [so] challenge the place of trial ... shall constitute a waiver of any objection to the place of trial.

He also relies on the similarly worded article II, section 16 of the Colorado Constitution ("In criminal prosecutions the accused shall have the right to ... a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed."). But defense counsel never mentioned the state constitution in the trial court, much less made a separate state constitutional argument there (or even here on appeal). "Where, as here, a defendant does not make a specific objection, with a separate argument , under the state constitution, we must presume the defendant's objections are based on federal, not state, constitutional grounds, and limit our review accordingly." People v. Rodriguez , 209 P.3d 1151, 1156 (Colo. App. 2008) (emphasis added), aff'd , 238 P.3d 1283 (Colo. 2010).

The emphasized language is sometimes called the vicinage clause. Though overlapping, venue and vicinage actually address different things: "[V]enue refers to the location where the trial is held, whereas vicinage refers to the area from which the jury pool is drawn. It is possible in theory to change one but not the other." Price v. Superior Court , 25 Cal.4th 1046, 108 Cal.Rptr.2d 409, 25 P.3d 618, 623 (2001) (citation omitted).

"[V]enue is a procedural question involving the appropriateness of a place for a defendant's trial on a criminal charge, and not a substantive question relating to the defendant's guilt or innocence of the crime charged." People v. Posey , 32 Cal.4th 193, 8 Cal.Rptr.3d 551, 82 P.3d 755, 759 (2004).

As pertinent here, silence "includes the statement of a desire to remain silent, as well as of a desire to remain silent until an attorney has been consulted." People v. Rogers , 68 P.3d 486, 492 (Colo. App. 2002) (quoting Wainwright v. Greenfield , 474 U.S. 284, 295, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986) ).